Good morning, Your Honors, and Judge Rollinson, counsel. May it please the Court, I am Lyndsay Weston. I represent appellant Mr. Leroy Trevino, who is appealing his conviction for ineffective assistance of counsel on direct appeal, which is unusual. I have a few comments, and then obviously we'll answer any questions that this Court has. First of all, the first rule for any trial counsel of either side is preparedness. Without preparedness, knowing the facts, the evidence, the law, no counsel is able to make a tactical decision. It is clear from the record here, Your Honors, that Mr. Trevino's trial counsel did not know the facts. We don't have to speculate about that. It's on the record. Mr. Hansen's defense of Mr. Trevino centered on the fact that two other individuals, Mr. Carrillo or Mr. Martinez, arrived to pick up the money, and they, in fact, were one of the two of them, supposedly the source of the drugs which ultimately the jury convicted Mr. Trevino of. Mr. Hansen did not prepare for this case, and because he did not prepare for this case, he brought out highly damaging and inadmissible evidence against his client. Sotomayor, counsel, here is what is troubling me. It may be true that he did not prepare. I mean, we'll assume that. We assume that some of the evidence that he brought out should not have been brought out. The question is that there was deficient performance to do that and not to prepare. But the problem with respect to ineffectiveness is always to show that it would have made some difference, that it was prejudicial in light of the contours of the entire case. And generally, that's not possible to do on direct appeal, because you don't know what else could have been unearthed in the preparedness and how it might relate to the other deficiencies of counsel. So could you, Mr. Trevino, respond to that? And if you have any case of recent vintage where we have handled a lack of preparedness claim on direct appeal, I'd appreciate it. Yeah. The case I did cite is a much older case, and that's United States v. Tecker. Obviously, this is a very rare, and it's rare to have oral argument on an IAC. I think that in terms of the prejudice, I've got several comments. First of all, the testimony that Mr. Hansen elicited was so damaging to Mr. Trevino that I don't see how any jury could put it aside. Namely, that at least two of his brothers were drug dealers, were methamphetamine dealers, which is what he was charged with, and that Mario Hasso was who Hansen elicited information about, was involved with Mr. Trevino's brothers in methamphetamine dealing, that Mr. Trevino was known to law enforcement aside from this case. So for the first witness, what the jury heard is that my client comes from a family of drug dealers, and that he's got prior law enforcement contacts, and that, in fact, his brother had the phone that allegedly or not, I shouldn't say allegedly, that Mr. Hansen was convicted of. So I think that the prejudice is that the evidence was so damaging that this jury could not disregard it. Secondly, and I understand the Court's concerns, when you have a counsel who is so profoundly unprepared, as Mr. Hansen was, and who proceeded with absolute disregard for the facts of this case, I think that the jury would be, this would indicate that he was unable or incapable of challenging the government's evidence that was presented in any kind of competent way. If you're bringing in such damaging testimony because you haven't prepared, how are you competent to cross-examine Francisco Martinez, you know, and the district court said that he thought the district judge said that he thought that Mr. Martinez was involved in this, or Mr. Alfaro, who received a very good plea agreement and had numerous incidents of lying. The evidence against Mr. Trevino was not extraordinarily strong. And any kind of investigation or actually bringing out additional facts, Mr. Hansen could not have done that because he wasn't prepared. Kennedy. You know what the difficulty is, and you can, you can, it's easy enough to say he was prejudiced, he was this, he was that, all of it. But what of the errors undermine confidence in the outcome of the trial? Isn't that what we have to look at? Harrington. Yes, Your Honor, and I think that the case that goes to this is chronic. And I think that courts in chronic. Kennedy. No, I think, let me state it another way. I think what you're complaining about is the errors of counsel caused a man who was guilty to be found guilty. Harrington. No, Your Honor, I'm not talking about that. I don't think so. I think what I'm saying is that chronic focuses on the Sixth Amendment right to competent counsel because it goes to the very heart of the adversarial process. And when you have counsel who brings in horribly damaging evidence because he's not prepared. Kennedy. He did. Harrington. Because he brings in evidence that is very difficult for any, any of the most diligent jurors, and I'm certain these jurors were, that they would not be able to disregard that, then the very adversarial process has broken down. And that's in response to Judge Schroeder's comment, which is that there's some problems to discuss the fact that, or excuse me, strike, that Mr. Hansen was incapable of actually challenging Mr. Alfaro and Mr. Martinez. Ginsburg. Let me ask you. Okay. Let me ask you the question. You didn't try the case. Harrington. No, I, no, I didn't try the case. Ginsburg. Suppose that that evidence weren't there, that your complaint, that, that your complaining about is the worst. What argument would you have made to the jury that would have suggested a reasonable doubt about his? You don't, you don't have to argue that the jury would have, would have found that, but that you would have argued. Harrington. If there's no evidence that, that Mr. Hansen brought in, there would  not be that connection that, in fact, Mr., the phone that was used largely in the drug deal belonged to Mr. Trevino's brother. That would not have been there. Kennedy. The proof wouldn't have been there, but the suspicion was there. Harrington. There could have been a suspicion, but it could, it would have been a suspicion, and it would not have been. Kennedy. There were two telephones, and they were both in the hands of people who were close associates of Trevino. He had done very clever things so that he would have the backdrop, and his lawyer kind of wiped some of that out. So they wouldn't have known, but they, they had to know who had, had the telephone, who they were issued to. Harrington. Your Honor, as the government stated in its closing, or actually in, in colloquy with the district court, this was a crucial piece of evidence for the government. Kennedy. What was? Harrington. The, the Lalo Lopez phone and the connection between Mr. Trevino. Kennedy. All right. Rule out what was said and the fact that it was proved that it was his. What did they know? But without the lawyer's testimony. Harrington. They knew that potentially one of Mr. Trevino's last names was Zinon Miranda Lopez, and that there was a Lopez who was subscribed to the phone and that he, Mr. Trevino admitted that he had used the name Zinon Miranda Lopez before. So there would have been that connection. Your Honors, excuse me, but I'd like to make, reserve the rest of the time. And the one last thing I'd like to say, Your Honors, and I will reserve it one minute, is that I truly believe there's ineffective assistance of counsel here, and maybe not just at this trial. The majority of cases, criminal cases, are resolved, as this Court knows, before trial. In order to resolve cases, you have to have prepared counsel who's willing to discuss and advise a criminal defendant of the strength of the evidence and the consequences. If this Court is inclined not to grant ---- Breyer. Well, a third of the Court is inclined not to grant. Harrington. Then I would ask that this Court do it without prejudice to Mr. Trevino's filing a 28 U.S.C. ---- Kagan. You don't want to lose on the merits here. Harrington. No. No, I don't, Your Honor. Kagan. Okay. Harrington. Thank you. Kagan. Well, I don't want Mr. Trevino to lose on the merits. Good morning. May it please the Court, Mary Grad for the United States. In this directive field, defendant seeks to litigate the ineffective assistance of counsel claim on an incomplete record, as the Court has noted. The claim that counsel urges, the Lala Lopez telephone, as the government pointed out in the brief, this did not show a lack of preparedness on Mr. Hansen's part. In fact, with the record ---- Breyer. I hope you're not going to argue that the man was effective, are you? Harrington. I think he ---- I don't think any of the claims that the Court, that the defendant brought forward now shows that he was ineffective. Your Honor, on that claim ---- Ginsburg. You mean as a matter of law? Harrington. I think that's right, Your Honor. I mean, I think ---- Breyer. Well, you're not arguing that his performance was up to ---- completely up to snuff, are you? Harrington. Your Honor, I don't think that anything that as assigned as error shows ineffective assistance of counsel on this record. And I think that's the difficulty. Even the claim that counsel presents about the Lala Lopez phone and asking, revealing the brother, what the record shows is that immediately after, Mr. Hansen expressed surprise and asked to speak to his client at the next break. And there was a colloquy with the judge about the bail of ---- the marshal service not allowing him to speak. Your Honor, as the Strickland case points out, part of the questioning depends on what the defendant has told his counsel. Now, if the defendant, Leroy Trevino, told his counsel that he had no connection with Lala Lopez and that it was an effective line of questioning, not knowing that Officer Mercado would know the connection, that he was pointing out there was no connection between Lala Lopez and Mr. Trevino, that is an ineffective question. That's an appropriate question if Mr. Trevino has told his counsel that there's no connection between him and Lala Lopez. So on this ---- Breyer. How do we know what he told him? We don't know. No, that's exactly right, Your Honor. And I think ---- and essentially what the Court has to find here is that there's just an incomplete record. There is clearly not ineffective assistance that's so overwhelming that it deprived Mr. Trevino of a sixth amendment right to counsel, which is the only ---- Well, the other thing is that everybody who does criminal work knows that the client sometimes lied to him. It's not a lawyer who does criminal work who doesn't know that with absolute certainty. So he checks to verify. And this guy didn't. If he had, he would have known. I don't know, Your Honor. I think that counsel ---- But he didn't determine a difference in the outcome of this trial. I don't think so. And I think that ---- and that's essentially what they are. It was required. That is required, that he ---- that the defendant show prejudice on this record. The evidence was circumstantial, Your Honor, but it was overwhelming. You know, the telephone connection to the Mercado phone and the Lala Lopez phone, the defendant's lying to the agents when they interviewed him at the time, all of those various connections showed. And essentially Alfaro, who of course was given a plea deal to testify at trial, said that Trevino was his source of narcotics. So there was overwhelming evidence in this case to suggest that there was that. And with that, Your Honor, I'll thank you. I'll cede the rest of my time. Thank you. As this Court is aware, I put in the record, there is in the record at pages 39, 33 to 39 of the first volume of Excerpts of Records, a series of letters between Mr. Hansen and one response from Assistant United States Attorney Mary Grad. That puts into context, I think, the kind of representation that Mr. Hansen provided. I could say it's from soup to nuts, and the nuts is the fact that the sentencing case had to be continued twice by Judge Shub, because defense counsel failed to have the pre-sentence report read in Spanish to his client, who is not fluent. Again he was appointed? No, Your Honor, he was not. Mr. Hansen had retained counsel until the end of July. He, 10 weeks prior to trial, retained Mr. Hansen, who at that point was practicing in Stockton, which is the location of the offense. Okay. Thank you for considering this. Thank you.
judges: Schroeder, Farris, Rawlinson